# Vandergrift & Forman's Appeal.

1. Leaseholds of land and buildings on leaseholds are not "goods and effects," within the meaning of the Act of the 13th of June 1836, Pamph. L. 585, relating to the service of foreign attachments, and therefore where the sheriff treated *such* property as personal property, and returned that he had taken it into his actual custody, and in serving subsequent foreign attachments, did not go again to the property, but simply endorsed the writs, and served a summons on the garnishees, such service did not comply with the requisites of the act.

2. The court below ruled that the leaseholds having been seized on a preceding attachment, the sheriff was not required to go again to the property itself to serve the subsequent attachments; that he had it in his custody already, and as in case of levy it was only necessary to endorse the writs, and that service on the tenants and garnishees completed the attachments: *Held* (reversing the court below), that this was not such service as was contemplated by the act.

3. One who contracts to drill an oil well, and to furnish the tools, ropes, fuel, &c., to be used in the drilling, can file a mechanics' lien against the well for the work so done and the materials furnished, under the provisions of the second section of the Act of the 7th of March 1873.

November 17th 1876. Before AGNEW, C. J., SHARSWOOD, GORDON, PAXSON and WOODWARD, JJ. WILLIAMS and MERCUR, JJ., absent.

Appeal from the Court of Common Pleas of *Butler county:* Of October and November Term 1876, No. 205.

This was an appeal from the decree of the court confirming the report of the auditor appointed to distribute the fund arising from the sale of the interest of W. W. Perkins in certain oil leases, oil wells, fixtures, machinery, &c., connected therewith, under two writs of fieri facias issued by Vandergrift & Forman.

The facts, in the main controversy before the auditor, are fully set forth in the opinion of this court.

The only other question passed upon by this court was as to the right of D. C. Boyle to file a lien under the Act of March 7th 1873 (Pamph. L. 219). The claim of Boyle was for a balance on a contract for drilling the U. P. Well. The contract was made in the month of March 1873, wherein Boyle was required to drill said well to the oil-bearing rock, furnishing tools, ropes, and fuel for the drilling of the same, for the sum of $3400. He commenced work on the 24th of March 1873, and completed the well on the 14th of June following, and received on said contract $2462.91, leaving a balance of $937.09 unpaid, for which he filed his lien. The other claimants to the fund objected to the allowance of this claim, because Boyle was a contractor and therefore could not file a lien under the Act of 1873.

The auditor allowed the claim, and the court below (Bredin, A. J.,) sustained the allowance.

*Dodd & Lee, Ash & Sterrett, McJunkin & Campbell,* for appellants.

*Charles M' Candless* and *John M. Thompson,* for appellees, except D. C. Boyle, for whom *John M. Miller* appeared.

Mr. Justice WOODWARD delivered the opinion of the court, January 2d 1877.

Vandergrift & Forman, execution creditors of William Wallace Perkins, on the 13th and 15th of October 1873, procured levies to be made on the defendant's property, which was sold by the sheriff on the 21st day of the same month. Except a lot of household goods in Fairview borough, which produced at the sale $108.50, the property consisted of undivided interests in five leaseholds in the township of Fairview, and two leaseholds in the township of Con-

[Vandergrift & Forman's Appeal.]

cord, with one or more producing oil wells and the usual engines, engine-houses, machinery and fixtures upon each. The aggregate sum of $9951.50 was realized by the sale. Before the auditor appointed to distribute the fund, the main controversy arose between the execution creditors and the plaintiffs in numerous foreign attachments against Perkins, issued and alleged to have been served on the 3d and 6th of October 1873. The sheriff returned in each case that he had taken into his actual custody the leasehold estates with the oil wells upon them and the appurtenant buildings and fixtures. In the case of John M. Thompson the return set forth : "I have also summoned T. B. Clark, H. W. Timblin, Allen Wilson and Vanorman as garnishees." In the cases of Brooks & Co., W. H. McPherson, W. H. Timblin, Alexander McPherson, H. F. Westerman and Timblin and Clark, the only garnishee summoned was W. H. Timblin. In Allen Wilson's case, the garnishees were Allen Wilson, George V. Forman, J. J. Vandergrift and the Fairview Pipe Line and Vandergrift & Forman Pipe Line consolidated. It was not shown in any one of the cases that the garnishees held under the defendant. The record shows that no actual service was made. But the court below held that as the leaseholds had been seized and placed in the custody of Allen Wilson under foreign attachments against A. W. Russell on the 10th of September 1873, "the sheriff was not required to go again to the property itself ; he had it already, and as in case of levy, required only endorsement on writs, the service of summons on tenants and garnishees completed the attachment." It was alleged at the argument by the counsel for the appellants that the facts were misconceived by the court so far as they related to the "U. P. Well," which produced at the sale $3550, and the "Toronto tract" which produced $2550, neither of them having been·seized under the attachments against·Russell. In one of the suits—that of John M. Thompson—judgment was taken for want of an affidavit of defence on the 30th of October 1873. In all the others Mr. Thompson appeared as the attorney of the defendant on the 16th of December 1873, and· with the consent of the attorneys for the plaintiffs, confessed judgments to the plaintiffs in sums due to be liquidated by the prothonotary. $290.94 were distributed to the judgment of H. T. Westerman, which is shown by the record to be still unliquidated ; $162.57 were distributed to Allen Wilson's judgment, in which a feigned issue has been awarded and is still pending. On these facts the court below decreed the fund to the plaintiffs in the attachments to the exclusion of the execution creditors.

Objection was made by the appellants to the distribution to the · attaching creditors on the ground that the writs had not been legally served, and no lien, therefore, had been acquired. Upon the assumption that the property seized, being chattels real, were such personal property as the legislature contemplated in enacting

the 48th section of the Act of 13th of June 1836, the service of the writs was sustained by the court below as a substantial compliance with the statutory requirements.

The provision made by the 48th section for the service of a foreign attachment is as follows : " The officer to whom such writ shall be directed shall go to the person in whose hands or possession the defendant's goods or effects are supposed to be, and then and there declare, in the presence of one or more credible persons of the neighborhood, that he attaches the said goods and effects." By the 49th section of the same act, it is directed that the execution of the attachment shall be as follows : " If the attachment be levied on houses, other buildings or lands, it shall be the duty of the sheriff to leave a copy of the writ with the tenant, or other person in actual possession, holding under the defendant, and summon him as garnishee." Provision is made subsequently in the section for the attachment of a rent charge as a second class of real estate, and of other incorporeal hereditaments as a third class. For present purposes, the real estate subject to the operation of a foreign attachment are "houses, other buildings or lands." The personal property liable to seizure must consist of " goods or effects." The terms employed by the legislature in these two sections are exceptional and peculiar. The omission of the word " chattels" in the 48th section is significant. Throughout the act relating to executions, passed the same year with the act relating to the commencement of actions, which includes the provisions for foreign attachments, the words " goods and chattels" are used in describing and referring to personal property. More than that, the form of the writ prescribed by the 43d section of the Act of the 13th of June 1836, provides for the attaching of the defendant "by all and singular his goods and chattels, lands and tenements." The change in the phraseology could not have been undesigned. The 50th section directs that the officer shall proceed to secure " the goods and effects" of the defendant " if susceptible of seizure or manual occupation." To bring leaseholds of land and buildings on leaseholds within a description implied in the words " goods and effects," would require a construction that would be forced and strained. Their meaning is free from all ambiguity or doubt, whether used in a popular, a lexicographical, or a legal sense. The word " goods" is always used to designate wares, commodities and personal chattels. The word " effects" is the equivalent of the word movables. With the same obvious purpose in view, the 49th section defines the real estate which shall be subject to the operation of the statute to be " houses, other buildings or lands." In the case of a house or other building upon either a leasehold or a freehold, if a tenant or other person is in possession, holding under the defendant, the writ must be served on him. If no person is in possession, the writ must be advertised. There were buildings on all the leaseholds against

which these attachments were issued, and persons were in possession who were returned by the sheriff as having been summoned. But the record does not show that they were tenants, or held under the defendant. Indeed, the returns were avowedly made upon the assumption that it was personal property that had been seized, for a taking by the sheriff into his actual custody was alleged. Such a return to a fieri facias would be unsustainable. It was held in the Novelty Iron Works' Appeal, 27 P. F. Smith 103, that a leasehold, being a chattel real, can be seized and sold only as real estate, not as personal goods capable of transportation; and that the levy upon it can be only by description of the realty out of which it is carved. In delivering the opinion of this court, GOR-DON, J., said that "a lease of land, during the term, is as fixed as the land itself, for it can only be used upon the land out of which it arises. It is nothing more or less than a right to use the freehold for the term mentioned in the lease. It is therefore an estate in land."

That property of the character of that which was here attached could not safely be held liable to actual seizure and manual occupation, is a proposition that demands no elaboration. The defendant had an undivided interest in these leaseholds. Their management required the employment of clerks and laborers, contracts for machinery and supplies, the transportation of the products of the wells, and the keeping of complicated accounts with producers, carriers and partners. Such disputes respecting ownership as are alleged to be existing here could readily arise. The effect of the establishment of a rule by which the decree of the court below would be sustained, could readily be conceived upon large manufacturing establishments erected upon leased lands, such as sugar refineries, distilleries, iron furnaces and rolling-mills. If the sheriff, under a writ against the owner of an undivided interest, could take such structures into his "actual custody," and provide for and control their business during the pendency of a protracted litigation, the Foreign Attachment Act would become the surest and swiftest possible means of insuring the ruin of the proprietors and the destruction of the business. And in no case that could be supposed would disaster be more certain and more utter than in the case of such property as that out of the sale of which this fund was raised.

Nothing would be gained by an inquiry into the validity of the service of these attachments, if the property against which they were issued had been personal within the meaning of the statute. It is enough to say that they were not legally served against "houses, other buildings or lands." The consequence of the defect is obvious. The lien provided by the 51st section of the act was not created for the benefit of the plaintiffs. In a *per curiam* opinion in Hays *v.* Gillespie, 11 P. F. Smith 155, it was said that, "in so severe a proceeding as a foreign attachment, we cannot doubt that the prescribed form of serving the writ must

[Vandergrift & Forman's Appeal.]

be strictly pursued." And in a note to that case, the opinion of Sharswood, P. J., in Lambert *v.* Challis, in the District Court of Philadelphia, was reported, where it was decided that the property attached could not be held when the service was defective.

The conclusion thus reached upon the main question in issue between the appellants and the attaching creditors, obviates the necessity for an examination of the merits of the subsidiary points presented by the record.

A fair construction of the second section of the Act of the 7th of March 1873, would seem to justify the appropriation that was made to D. C. Boyle's mechanics' lien. The text of the section is, " All persons doing work for, on or about the erection, construction or repair of any engine, engine-house, tanks, derrick, building, machinery, wood or iron improvement, erected, constructed or repaired upon any leasehold estate, or for boring, drilling or mining on said lease or lot for the development or improvement of the same, whether such labor is or may be done by the day, month or year, or by contract for the tenant or tenants, lessee or lessees of such lot or lease of parcel of land, or for their use and benefit, shall have a lien upon the personal property and fixtures on said lot or lease of ground, and upon such lot or leasehold itself for the price and value of such work and labor." Boyle's work was done under a contract. Partial payments had been made, and the auditor gave him the residue. The statute directs that " the price and value" of the work shall be the measure of the laborer's right of lien, and here this price and value were fixed by the contract which the act in terms protects.

> Decree reversed at the costs of the plaintiffs in the foreign attachments, and record remitted for re-distribution in accordance with the conclusions of this opinion.